THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES P. DAVIS, Defendant-Appellant.

Third District    No. 80-256

Opinion filed January 13, 1981.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The defendant, Charles P. Davis, appeals from his conviction for armed robbery following a jury trial. He was sentenced to seven years' imprisonment. One issue is raised in this appeal: whether the trial court erred in permitting the State to elicit evidence of threats made against a State witness by a co-defendant and a defense witness. The defendant argues that he was substantially prejudiced by the State's presentation of such evidence. The State contends that the evidence was properly elicited as a rebuttal to the defendant's inference that certain State witnesses had fabricated their testimony. In the alternative, the State argues that any error resulting from the admission of the challenged evidence was harmless.

Our resolution of this issue does not require a detailed recitation of the facts in this case. It will suffice to note the following. At the defendant's trial for armed robbery, Melvin Walker, the victim, positively identified the defendant as one of the two men who robbed him at knife point on July 14, 1979. Initially, Walker was uncertain of the defendant's name, referring to the defendant as "Tim" upon first reporting the incident to the police, but he later correctly identified the defendant as Charles Davis. Although the record reveals Walker's mistake regarding the defendant's first name, it clearly indicates that Walker unquestionably identified the defendant as the perpetrator.

At trial, Walker was the State's first witness. He was followed on the stand by Joe Randolph, an acquaintance of the defendant and of Michael Harvey, the defendant's separately tried co-defendant. Randolph testified that the defendant and Harvey told him prior to the robbery that they planned to rob someone and that they told him after the robbery that they had committed the offense. On cross-examination Randolph was questioned by the defendant's attorney about the timing of Randolph's revelations to the police, since the offense occurred in July 1979 and Randolph did not relate the information he knew to the police until November 1979, one month before the trial commenced. Randolph also indicated on cross-examination that he had discussed the planned testimony of Jane Bushby with her in October 1979. Jane Bushby was a former girlfriend of the defendant, with whom Randolph was then living.

During redirect examination Randolph recanted some of his earlier testimony and stated that he never discussed with Jane Bushby the fact that she might testify. Randolph also testified that Jane Bushby was being threatened and that he had reported to the police that Michael Harvey had tried to break down the back door to the house in which Randolph and Bushby lived on October 30, 1979.

The next witness for the State was Jane Bushby. She testified that several days after July 12, 1979, the date of the instant offense, the defendant stopped by her house. The defendant's foot was in a cast and he told Bushby, Randolph, and a third person who was present that he had broken his foot when he jumped out of a car after seeing the victim of the armed robbery pull up in a police car.

On cross-examination, Bushby admitted giving a statement to the public defender's investigator which provided an alibi for the defendant. She had told the investigator that she and a woman named Janice Mores (Henderson) had been with the defendant at Bushby's house at the time of the armed robbery. She also indicated that she had been pressured by Michael Harvey and Janice Mores (Henderson) to tell the alibi story.

On redirect examination, Bushby denied the truth of the alibi statement and repeated that she had been pressured to fabricate the story. The pressure to which Bushby was subjected consisted of threats by Mores (Henderson) to testify against Bushby in a custody proceeding involving Bushby's infant son. During cross-examination, Bushby had testified that her son was the paramount thing in her life and that her husband had threatened to take the child away.

Janice Mores (Henderson) testified for the defendant and furnished an alibi for his whereabouts on the night of the offense which was consistent with the alibi story denied by Bushby. During cross-examination, the prosecutor questioned Mores (Henderson) without objection regarding the pressure she imposed on Jane Bushby to testify for the defendant. Mores (Henderson) denied putting any pressure on Bushby.

It is the evidence of threats elicited by the prosecutor through redirect examination of Randolph and Bushby and the cross-examination of Mores (Henderson) to which the defendant objects on appeal. The State contends that the evidence was properly elicited as a response to the defendant's testimony which suggested fabrication or other improper motives by Randolph and Bushby.

The scope of redirect examination is within the trial court's discretion (*People v. Nally* (1979), 75 Ill. App. 3d 762, 394 N.E.2d 776), and is designed to remove unfavorable inferences raised by cross-examination. (*People v. Sanchez* (1979), 73 Ill. App. 3d 607, 392 N.E.2d 378.) We find no abuse of the trial court's discretion in admitting the challenged

testimony in the case at bar. As the reviewing court in *People v. Marino* (1980), 80 Ill. App. 3d 657, 666, 400 N.E.2d 491, 498, stated:

> "* * * [I]f one party opens up an issue and the other party will be prejudiced unless he can introduce contradictory or explanatory evidence, then the prejudiced party will be permitted to introduce such evidence, even though it would not have been admissible initially. [Citations.] An accused cannot interject an issue into a case and then argue that it was error to bring the issue to the jury's attention. [Citation.]"

Redirect examination may properly include questions on matters brought out during cross-examination. *People v. Miller* (1978), 58 Ill. App. 3d 156, 373 N.E.2d 1077.

We conclude in the case at bar that the evidence of threats against Bushby was properly elicited on redirect examination of Randolph and Bushby and by the unchallenged cross-examination of defense witness, Mores (Henderson). In so holding we note the recent opinion of this court in *People v. Kennedy* (1980), 88 Ill. App. 3d 365, in which we found prejudice to the defendant in the admission of evidence regarding a threat to a State's witness made by a defense witness. In *Kennedy* the evidence of threats was not linked to the defendant, whereas in the instant case, the defendant's close association with Mores (Henderson) and with Michael Harvey provides a connecting link. Incidentally, we note that the error in *Kennedy* arising from the erroneous admission of the evidence of threats was found to be harmless. Given the overwhelming evidence against the defendant in the instant case, any possible error which may have occurred must likewise be deemed harmless.

For the foregoing reasons the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.