# Illinois Official Reports

## Appellate Court

---

### *People v. Norris*, 2018 IL App (3d) 170436

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN V. NORRIS, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-17-0436 |
| Filed | December 31, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 17-DT-10; the Hon. Rick A. Mason, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | John V. Norris, of Joliet, appellant *pro se*.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, David J. Robinson, and Jasmine D. Morton, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE LYTTON delivered the judgment of the court, with opinion.<br>Justices Holdridge and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, John V. Norris, appeals following the denial of his petition to rescind his statutory summary suspension. He raises five arguments on appeal, which we address in turn.

¶ 2                                          I. BACKGROUND

¶ 3    The State charged defendant with driving while under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2016)) via complaint dated January 3, 2017. Based on defendant's refusal to complete postarrest testing, his driver's license was subject to a 12-month statutory summary suspension. Defendant, who represented himself throughout the entirety of the proceedings below, subsequently filed a petition to rescind the suspension on the grounds that (1) the arresting officer did not have reasonable grounds to believe that defendant was under the influence of alcohol and (2) he had not been warned that refusal to submit to testing would result in the suspension of his driver's license.

¶ 4    Following a number of agreed continuances, defendant's petition to rescind was stricken for want of prosecution on March 15, 2017, when he failed to appear in court. On April 4, 2017, defendant filed a motion to reinstate his petition, averring that he had been sick on the previous court date and that officials at Will County Adult Detention Facility had failed to inform the court of that fact. On April 13, 2017, the court reinstated defendant's petition, commenting: "We'll show the motion is reinstated, and the new 30 days starts to run from today." The court scheduled the hearing for May 1.

¶ 5    Defendant subsequently filed a "Motion to Suppress Statements (*Miranda* Warning)." In the motion, defendant asserted that statements he made in the course of his traffic stop should be suppressed on the grounds that the arresting officer never read a *Miranda* warning. In the motion, defendant did not identify with any specificity the statements he sought to have suppressed.

¶ 6    On April 26, the State filed a motion to continue the hearing on defendant's petition because the arresting officer would be unavailable on May 1. The court granted the State's motion over defendant's objection and rescheduled the hearing on the petition to rescind for May 15.

¶ 7    A combined hearing on defendant's petition to rescind and his motion to suppress commenced on May 15, 2017. Defendant's first witness was the arresting officer, Robert Mau, of the Joliet Police Department. After a series of preliminary questions, an attempt was made to play the video recording of the traffic stop from Mau's squad car. The record reflects, however, that apparent technical issues prevented the video from being played at that time. Defendant agreed to suspend his questioning of Mau and instead question Officer Kristoff Petro of the Joliet Police Department while the technical problems were being fixed, in an effort to accommodate Petro's schedule.

¶ 8    Petro testified that she was investigating a hit-and-run accident on the night in question. In the course of her investigation, she brought the victims of the traffic accident to the area where Mau was performing the traffic stop of defendant, in order to determine if the victim could identify defendant. Petro testified that she could not recall whether defendant was emitting the odor of an alcoholic beverage or stumbling because she was focused on the traffic

investigation rather than on defendant's physical state at the time. The video from Mau's squad car was then played in court.

¶ 9    The video shows defendant's vehicle as it drives past Mau's squad car. Mau begins pursuit, catching up to defendant's vehicle at a red traffic signal, where defendant's vehicle is stopped. Defendant proceeds through the intersection before the signal changes to green. Mau activates his overhead lights, at which point defendant turns onto the next available side street.

¶ 10   After Mau asks defendant to step out of his vehicle, defendant admits that he drank one beer earlier that evening, later clarifying that he drank it approximately an hour earlier. Mau asks defendant to recite the alphabet, beginning with the letter C and ending with the letter P. On his first attempt, defendant recites the alphabet through the letter S before stopping. On his second attempt, he performs the test correctly. Next, Mau asks defendant to count backwards from 83 to 67, which defendant does without mistake. Mau then asks defendant to count from one to four and back, while touching each of his fingers to his thumb. Defendant performs the counting correctly and appears to complete the finger-touching portion successfully.

¶ 11   Mau then performs the horizontal gaze nystagmus (HGN) test. Defendant grows impatient with the test and accuses Mau of performing it incorrectly. After a lengthy discussion, Mau completes the HGN test. Defendant then declines to perform the walk-and-turn test, citing ongoing knee problems. Similarly, he states that he cannot perform the one-leg stand test, because of chronic ear infections. Mau places defendant under arrest.

¶ 12   After the video was played, defendant resumed his questioning of Petro. Petro testified that the victims of the car accident she was investigating positively identified defendant and his vehicle. Defendant then expressed to the court his desire to lay a foundation for the booking room video. He explained that the video would show Petro in close proximity to him at multiple times, which would be relevant to her testimony concerning whether defendant was emitting the odor of an alcoholic beverage. The court found that defendant could question Petro regarding observations in the booking room but ruled that the playing of the video was not necessary at that time. When the issue of the booking room video was raised again while Petro was testifying, the court again denied defendant's request, adding: "I am not going to stop you from playing the video later because those issues may be important to warnings, I presume."

¶ 13   On cross-examination, Petro testified that she informed Mau that defendant had been positively identified in the hit-and-run accident. She did not participate in Mau's DUI investigation and did not focus on any odor defendant was emitting nor did she check defendant's eyes.

¶ 14   Mau returned to the witness stand following Petro's testimony. Defendant asked Mau if he read to defendant the warning to motorist at 8:11 p.m. that night while in the booking room of the Joliet Police Department. Mau replied that he read the warning verbatim. Defendant's direct examination grew contentious as it proceeded. Shortly after Mau testified that he read the warning verbatim, the following exchange took place:

"[DEFENDANT]: Officer Mau, at some point [did] you walk over with a piece of paper in your hand?

[MAU]: Yes.

[DEFENDANT]: And you—is it okay to demonstrate, Judge? I am not going to do anything crazy.

THE COURT: Well, you have a document—

[DEFENDANT]: Yes. No, I am just going to act out.

[PROSECUTOR]: Judge—

[MAU]: Step back.

THE COURT: Yeah, you are too close to the witness, so I am going to ask you to step back. Now, if you need to approach a witness with a document—

[MAU]: I'm going to get closer to you when we get you in Federal Court.[1]

THE COURT: All right. All Right.

[PROSECUTOR]: Judge, again—

THE COURT: I am going to allow that. Sit down, Officer. Thank you. You cannot say things like that, Mr. Norris. You can't threaten the witness. I am asking you to be civil. We have had this discussion and do I need to stop questioning at this point or can you do it respectfully?

[DEFENDANT]: That would be a very good idea because right now I'm ready to do something really stupid.

THE COURT: Well, and I don't think that's a good idea. Okay.

[DEFENDANT]: I'm not really impressed with you.

THE COURT: Okay, no more comments or further interrupting the proceedings at this point.

\*\*\*

THE COURT: Well, I am allowing [defendant] to be cuffed because he suggested he needed it for protection of all people. And because [defendant] says he cannot at this time ask any more questions, I am going to stop the questions from [defendant], but I am going to allow the State, however, the State to cross examine."

¶ 15 On cross-examination, Mau testified that he clocked defendant driving 55 miles per hour in a 30-mile-per-hour zone. He pulled defendant over after defendant proceeded through a red traffic signal. He observed that defendant had glassy eyes and was emitting the odor of an alcoholic beverage from his breath. Defendant told Mau that he had consumed one beer that night. Mau observed a 24-ounce can of beer, which he later learned to be unopened, on the driver's side floorboard. Mau testified that he eventually learned that defendant had been positively identified as the driver in a hit-and-run accident earlier that evening. Mau testified that defendant failed the "finger test" by failing to place his index finger to his thumb, adding: "It wasn't egregious, but he still missed it." A number of cues on the HGN test indicated to Mau that defendant had consumed alcohol.

¶ 16 Mau reiterated on cross-examination that he read the warning to motorist verbatim after defendant had been transported to the Joliet Police Department. He testified that his memory was exhausted as to the precise time at which he read the warning. The court, over defendant's objection, allowed the State to refresh Mau's memory with a copy of the warning to motorist

---

[1]Throughout the proceedings, defendant frequently referenced his efforts to sue Mau in federal court. Based on that fact, and the court's admonishment that defendant not threaten the witness, this particular line of transcript appears to have been misattributed in the record to Mau.

form from the court file. Mau affirmed that he read the warning at 8:11 p.m. He testified that defendant refused to take a Breathalyzer test.

¶ 17     In the middle of the State's cross-examination, defendant indicated that he had further questions for Mau. He stated: "I didn't get a chance to ask any of my questions." The court responded:

>     "THE COURT: You actually—you did ask questions and then you said you can't continue.
>
>     [DEFENDANT]: I didn't say I didn't want to continue. I just said I needed a break for a minute.
>
>     THE COURT: You said you were going to do something bad and obviously you forfeited your right to continue at that moment."

When the State completed its cross-examination, the court allowed defendant to proceed with his questions but made clear that it was a redirect examination. When defendant indicated that he had 13 more pages of questions for Mau, the court suspended proceedings and scheduled a continuance date.

¶ 18     Defendant resumed his redirect examination of Mau on May 18, 2017, but the court eventually stopped those proceedings "until such time as [defendant] can properly behave." The redirect examination resumed again on June 21. Defendant again disputed the characterization of his questions as redirect, insisting that he had never finished his direct examination of Mau.

¶ 19     After a series of questions to Mau, defendant requested the playing of the booking room video. As a proffer, defendant suggested that the video would show that Mau did not, in fact, read the warning to motorist while at the Joliet Police Department. Defendant did note, however, that he did not actually have a copy of the video with him at the time. The State objected on the grounds that it had not referenced the booking room video on cross-examination. In objecting, the State also noted that the hearing was entering its eighth hour of testimony. As a proffer, defendant asserted that the video would rebut Mau's testimony that he read the warning to motorist to defendant. The court denied leave to play the video but allowed defendant to proceed via questioning.

¶ 20     During his own testimony, defendant denied speeding or being in a hit-and-run accident on the night in question. He testified that he had a cold, the symptoms of which included itchy, watery eyes, a fever, and a runny nose. He denied "fumbl[ing] the finger test." He testified that Mau did not warn him that his refusal to submit to testing would result in the suspension of his driver's license. Defendant also denied refusing testing, noting that he offered to go to the hospital for a blood draw.

¶ 21     The circuit court ultimately denied defendant's petition to rescind the statutory summary suspension. The court commented that it was allowing in defendant's admission to Mau that he had been drinking alcohol on the night in question. The court then found Mau had reasonable grounds to believe that defendant was under the influence of alcohol, Mau had read the warning to motorist, and defendant refused the Breathalyzer test.

¶ 22                                    II. ANALYSIS

¶ 23     On appeal, defendant raises the following arguments: (1) the circuit court erred in denying defendant's petition to rescind his statutory summary suspension, (2) the State failed to hold

the hearing on defendant's petition within the required 30-day time limit, (3) the circuit court erred in denying defendant's motion to suppress statements, (4) the circuit court erred when it did not allow defendant to introduce the booking room video, and (5) the State committed a discovery violation in that it did not tender to defendant a copy of Mau's police report.

¶ 24                           A. Sufficiency of the Evidence

¶ 25     Section 11-501.1 of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501.1(a) (West 2016)) dictates that any person driving on public highways in Illinois is deemed to have given consent to chemical testing of blood, breath, or other bodily substance for the purpose of determining the content of alcohol in their blood. That section also provides that the refusal to submit to such a test, where a law enforcement officer has probable cause to believe the person is under the influence of alcohol, will result in the statutory summary suspension of that person's driver's license. *Id.* § 11-501.1(c). Section 2-118.1 of the Code, in turn, provides that a person whose driver's license has been subject to the statutory summary suspension may request the rescission of the suspension. *Id.* § 2-118.1(b).

¶ 26     The scope of a hearing on a petition to rescind statutory summary suspension is limited to certain issues, of which only the following are relevant in the present case:

> "1. Whether the person was placed under arrest for an offense as defined in Section 11-501, or a similar provision of a local ordinance, as evidenced by the issuance of a Uniform Traffic Ticket ***; and
>
> 2. Whether the officer had reasonable grounds to believe that the person was driving or in actual physical control of a motor vehicle upon a highway while under the influence of alcohol, other drug, or combination of both; and
>
> 3. Whether the person, after being advised by the officer that the privilege to operate a motor vehicle would be suspended or revoked if the person refused to submit to and complete the test or tests, did refuse to submit to or complete the test or tests to determine the person's blood alcohol or drug concentration[.]" *Id.* § 2-118.1(b)(1)-(3).

¶ 27     In reviewing the circuit court's denial of defendant's petition to rescind his statutory summary suspension, we apply a two-part standard of review. *People v. Wear*, 229 Ill. 2d 545, 561 (2008). We give great deference to the circuit court's factual findings, including any inferences drawn therefrom, reversing those findings only where they are contrary to the manifest weight of the evidence. *Id.* However, we review *de novo* the circuit court's ultimate decision to deny the petition. *Id.* at 562.

¶ 28     In the present case, there is no dispute that defendant was placed under lawful arrest. Two of the remaining issues, whether defendant refused testing and whether Mau read the warning to motorist, are purely factual. The circuit court found Mau more credible on those issues than defendant and found explicitly that defendant had refused testing and that Mau had read the warning to motorist. We defer to these findings, as they are not contrary to the manifest weight of the evidence. Further, defendant argues again that he offered to go to the hospital to submit to a blood draw. However, he cites no law that allows an arrestee dictate which manner of testing under section 11-501.1(a).

¶ 29     We next consider whether Mau had reasonable grounds to believe that defendant was under the influence of alcohol. "In determining whether there has been 'reasonable grounds' under subsection (b)(2) of the statute, this court has utilized the probable cause analysis

deriving from the fourth amendment." *Id.* at 560. "Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime." *Id.* at 563. " ' "The standard for determining whether probable cause is present is probability of criminal activity, rather than proof beyond a reasonable doubt. [Citations.]" ' " *Id.* at 564 (quoting *People v. Garvin*, 219 Ill. 2d 104, 115 (2006), quoting *People v. Lee*, 214 Ill. 2d 476, 485 (2005)). "[P]robable cause does not even demand a showing that the belief that the suspect has committed a crime be more likely true than false." *Id.*

¶ 30        Defendant successfully completed the backwards-counting test and at least appeared on the video to successfully complete the finger-touch test. While he initially failed the alphabet test, he was able to successfully complete it on the second attempt. However, defendant admitted to Mau that he had consumed alcohol that evening, and Mau was able to confirm that through the HGN test.[2] Further, Mau testified that he observed defendant's eyes were glassy and the odor of an alcoholic beverage was emanating from defendant's breath. Moreover, Mau observed defendant driving 25 miles per hour above the posted speed limit and running a red traffic light. He had also learned prior to making the arrest that defendant had been positively identified as the suspect in a hit-and-run accident earlier that evening. These facts would lead a reasonably cautious person to believe that defendant had consumed an amount of alcohol that had impaired his driving. See *People v. Rozela*, 345 Ill. App. 3d 217, 226 (2003) (rejecting argument that reasonable suspicion based upon the odor of alcohol, glassy eyes, and admission to drinking is necessarily dispelled by successful completion of field sobriety tests).

¶ 31        We thus find that Mau had reasonable suspicion to believe that defendant was driving while under the influence of alcohol. We defer to the circuit court's factual findings that defendant refused testing and that Mau read the required warning to motorist. Accordingly, we find that the circuit court properly granted defendant's petition to rescind his statutory summary suspension.

¶ 32                                    B. 30-Day Limit

¶ 33        Section 2-118.1 of the Code mandates that a hearing on petition to rescind a statutory summary suspension shall be held "[w]ithin 30 days after receipt of the written request." 625 ILCS 5/2-118.1(b) (West 2016). It is well-settled that unless any delay is occasioned by the defendant, the failure to hold the required hearing within 30 days of the request is a violation of the right to due process, the remedy for which is the rescission of the statutory summary suspension. *People v. Puckett*, 221 Ill. App. 3d 594, 596-97 (1991). "[T]he time provision set forth in section 2-118.1(b) of the *** Code is satisfied when the hearing begins within 30 days after receipt of defendant's written request ***." *People v. Cosenza*, 215 Ill. 2d 308, 315 (2005).

¶ 34        Section 1.11 of the Statute on Statutes contains detailed instructions on how time should be computed. It provides in whole:

---

[2]Defendant argues at length on appeal that Mau did not conduct the HGN test properly. By Mau's own testimony, however, the HGN test results merely indicated the consumption of alcohol, rather than amount or impairment. As Mau already knew defendant had consumed alcohol because of defendant's admission, any alleged error in the administration of the HGN test would have been harmless.

"The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sunday or is a holiday as defined or fixed in any statute now or hereafter in force in this State, and then it shall also be excluded. If the day succeeding such Saturday, Sunday or holiday is also a holiday or a Saturday or Sunday then such succeeding day shall also be excluded." 5 ILCS 70/1.11 (West 2016).

In *People v. Ribar*, 336 Ill. App. 3d 462, 463 (2003), the court found that section 1.11 of the Statute on Statutes is applicable to statutory summary suspension hearings because that it is a "general time-computation statute that applies to 'any act provided by law.' " (quoting 5 ILCS 70/1.11 (West 2000)).

¶ 35    In the present case, defendant's petition to rescind was reinstated on April 13, 2017. The first day of the 30-day window, per the Statute on Statutes, was April 14, 2017. The thirtieth day, then, was May 13, 2017. May 13, however, was a Saturday.[3] Thus, according to the Statute on Statutes, the thirtieth day was Monday, May 15, 2017. Defendant's rescission hearing commenced on that day.

¶ 36    As defendant's hearing commenced within the prescribed 30-day time window, we reject defendant's argument that the State failed to comply with section 2-118.1 of the Code. We also reject defendant's related argument that the State committed prosecutorial misconduct in moving for a continuance. Defendant has cited no case that holds the State that cannot move to continue a hearing to a date within the 30-day period.

¶ 37                                    C. *Miranda*

¶ 38    Defendant next argues that the circuit court erred in denying his motion to suppress statements based upon Mau's failure to read *Miranda* warnings. In making this argument, defendant maintains that Mau's questions at the scene of the traffic stop constituted a custodial interrogation. The State counters by arguing that a *Miranda* violation is not grounds for suppression of statements at a statutory summary suspension hearing. We begin by addressing that threshold question.

¶ 39    A hearing on a petition to rescind a statutory summary suspension is a civil proceeding. *Wear*, 229 Ill. 2d at 559. Section 2-118.1(b) of the Code provides that "[t]he hearings shall proceed in the court in the same manner as in other civil proceedings." 625 ILCS 5/2-118.1(b) (West 2016).

¶ 40    The fifth amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. The Illinois Constitution contains the same language. Ill. Const. 1970, art. I, § 10. In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the United States Supreme Court held that the privilege applied out of court as well, any time a person faces custodial interrogation, or "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." The *Miranda* Court held that the prosecution may not use statements made by a defendant in this context unless those statements were accompanied by certain procedural safeguards, or what have come to be known as the *Miranda* warnings. *Id.* As our own supreme court observed, "[t]he purpose of the

_____
[3]"A reviewing court may take judicial notice of the days of the week as they correspond to dates of the month." *People v. Gill*, 2018 IL App (3d) 150594, ¶ 104 n.8.

warnings is to ensure that the accused is aware of his substantive constitutional right not to incriminate himself and to provide him with the opportunity to exercise that right." *People v. Winsett*, 153 Ill. 2d 335, 348 (1992).

¶ 41   The *Miranda* rule came to be known as a prophylactic rule, a safeguard of a person's fifth amendment right against self-incrimination broader than the right itself. *Oregon v. Elstad*, 470 U.S. 298, 306 (1985) ("The *Miranda* exclusionary rule, however, serves the Fifth Amendment and sweeps more broadly than the Fifth Amendment itself. It may be triggered even in the absence of a Fifth Amendment violation."). While the rule is prophylactic, the United States Supreme Court has made clear that a violation of *Miranda* is of no less constitutional magnitude than a direct violation of the fifth amendment. *Dickerson v. United States*, 530 U.S. 428, 438-42 (2000). The enforcement mechanism behind the *Miranda* rule is the familiar exclusionary rule. *E.g.*, *Winsett*, 153 Ill. 2d at 350. In the *Miranda* context, our supreme court has summarized the exclusionary rule as follows: "[A]ny statement taken from a suspect without the presence of an attorney is inadmissible in the prosecution's case in chief unless the prosecution demonstrates that the defendant was given *Miranda* warnings and made a knowing and intelligent waiver of his privilege against self-incrimination." *Id.*

¶ 42   In *Wear*, our supreme court wrote: "This court has never specifically ruled whether the exclusionary rule should apply to implied-consent proceedings, and does not do so here." *Wear*, 229 Ill. 2d at 561 n.1. The court did note that at least one appellate court district had found the rule applicable in statutory summary suspension hearings, citing *People v. Krueger*, 208 Ill. App. 3d 897 (1991). *Wear*, 229 Ill. 2d at 561 n.1. In *Krueger*, the Second District held that the arrest requirement imposed by section 2-118.1 of the Code necessarily meant a valid and lawful arrest. *Krueger*, 208 Ill. App. 3d at 904. The *Krueger* court, however, was careful to point out that its ruling was not an endorsement of the exclusionary rule in civil proceedings. *Id.* at 904-05. Rather than excluding anything from the proceedings, a finding that an arrest was unlawful would negate one of the requirements of section 2-118.1, resulting in rescission of the statutory summary suspension. *Id.* at 907 ("[W]e prefer to rest our holding here on the construction of the statute that we have put forth rather than on the application of the exclusionary rule as such."). Indeed, the *Wear* court made a similar observation, commenting that "the use of the phrase 'exclusionary rule' is a misnomer in this context. A prevailing petitioner would not gain the exclusion of anything from a rescission hearing. Rather, if the court finds 'no reasonable grounds' for an arrest, then the suspension is simply rescinded." *Wear*, 229 Ill. 2d at 561 n.1.

¶ 43   The *Wear* and *Krueger* courts opined that where an arrest was unlawful, resorting to the exclusionary rule was unnecessary because the unlawful arrest alone would be grounds for rescission. In the *Miranda* context, however, numerous courts have refused to suppress statements at a statutory summary suspension hearing. In *Village of Algonquin v. Tilden*, 335 Ill. App. 3d 332, 335 (2002), the circuit court did not allow the arresting officer to testify at a statutory summary suspension hearing regarding questions he asked of the defendant, on the grounds that he had not read defendant the *Miranda* warnings. The Second District rejected that reasoning, stating:

"We need not decide [whether the defendant was in custody] because we conclude that any noncompliance with *Miranda* would not require excluding defendant's statements in this case. We follow the Fourth and Fifth Districts of the Illinois Appellate Court, which have held that statements made in violation of *Miranda*, which would be

otherwise inadmissible in a criminal proceeding, may be considered in a proceeding to rescind a statutory summary suspension of driving privileges. *People v. Pelc*, 177 Ill. App. 3d 737, 741 (1988); *People v. Furness*, 172 Ill. App. 3d 845, 849-50 (1988)." *Id.* at 336.

The *Tilden* court, like those in *Pelc* and *Furness*, found that because a statutory summary suspension is a civil matter intended to protect drivers on the state's highways, rather than punish the defendant, *Miranda* could not serve as grounds to suppress statements. *Id.* at 337; *People v. Pelc*, 177 Ill. App. 3d 737, 741 (1988) ("[S]tatements made in violation of *Miranda*, which would be inadmissible in criminal proceedings, can properly be considered to establish probable cause for the arrest in a summary suspension proceeding."); *People v. Furness*, 172 Ill. App. 3d 845, 849 (1988).

¶ 44    The holdings of the Second, Fourth, and Fifth Districts comport with the United States Supreme Court's decisions regarding *Miranda* and the exclusionary rule in the civil or noncriminal context. In *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976), the Court observed: "The Court has never held, and we decline to do so now, that the requirements of [*Miranda*] must be met to render pretrial statements admissible in other than criminal cases." In that case, the Court rejected the notion that non-Mirandized statements should be excluded from prison disciplinary hearings because they might be used in later criminal proceedings. *Id.* Indeed, the Supreme Court has refused to extend the exclusionary rule beyond criminal prosecutions in numerous cases. See, *e.g.*, *Immigration & Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1050 (1984) (deportation proceedings); *Stone v. Powell*, 428 U.S. 465, 493-95 (1976) (federal *habeas corpus* proceedings); *United States v. Janis*, 428 U.S. 433, 453-54 (1976) (federal tax assessment proceeding); *United States v. Calandra*, 414 U.S. 338, 349-50 (1974) (grand jury proceedings). Illinois courts have also declined to extend the rule to contexts beyond criminal trials. See *People v. Dowery*, 62 Ill. 2d 200, 206 (1975) (probation revocation proceedings); *Grames v. Illinois State Police*, 254 Ill. App. 3d 191, 200-02 (1993) (police department administrative discharge proceedings); *People v. Grubb*, 143 Ill. App. 3d 822, 824 (1986) (court supervision revocation proceedings).

¶ 45    The United States Supreme Court has never held that there is a firm bar on the application of the exclusionary rule in civil proceedings. In *Janis*, the Court observed: "In the complex and turbulent history of the rule, the Court never has applied it to exclude evidence from a civil proceeding, federal or state." *Janis*, 428 U.S. at 447. The *Janis* Court went on to adopt a balancing test, under which the exclusionary rule may be applied where the societal benefits of exclusion outweigh the costs. *Id.* at 454. Regarding those societal benefits, the Court observed that "the 'prime purpose' of the [exclusionary] rule, if not the sole one, 'is to deter future unlawful police conduct.' " *Id.* at 446 (quoting *Calandra*, 414 U.S. at 347). The *Janis* Court concluded that because the evidence in question had been excluded from the state criminal trial and would be excluded from any federal criminal trial, its exclusion in a tax assessment proceeding provided no additional deterrent effect. *Id.* at 447-48.

¶ 46    The same is true in the statutory summary suspension context. Any statements taken in violation of *Miranda* would be excluded from a defendant's criminal DUI trial. This exclusion deters police officers from not complying with the safeguards set forth in *Miranda*. Further exclusion of those statements in statutory summary suspension hearings would provide no additional deterrence, while imposing the cost of making "concededly relevant and reliable evidence *** unavailable" in a proceeding intended to protect the public from unsafe drivers.

See *id.* at 447. More fundamentally, where the exclusionary rule has been found inapplicable in contexts with great liberty interests at stake, such as deportation or the revocation of probation, it seems to follow *a fortiori* that the rule should not be applied where the temporary suspension of a driver's license is the ultimate cost. Accordingly, we join the Second, Fourth, and Fifth Districts in concluding that the exclusionary rule, at least in the context of an alleged *Miranda* violation, is inapplicable in statutory summary suspension hearings. It follows that the circuit court in the present case did not err when it denied defendant's motion to suppress. See *People v. Ringland*, 2015 IL App (3d) 130523, ¶ 33 (reviewing court may affirm on any grounds in the record).

¶ 47                            D. Booking Video

¶ 48    Defendant next argues that the circuit court erred in not allowing the booking room video to be played in court. The State counters that the court was within its discretion to bar the introduction of the video on redirect examination.

¶ 49    "Redirect examination is generally limited to an inquiry into new material elicited during cross-examination, and ordinarily it should not cover matters which could have been brought out during the [direct] examination." *Myers v. Arnold*, 83 Ill. App. 3d 1, 8 (1980). The scope of redirect examination is a matter of the circuit court's discretion. *People v. Davis*, 92 Ill. App. 3d 426, 428 (1981). The circuit court abuses its discretion where its decision is arbitrary, fanciful, unreasonable, or where no reasonable person could take the view adopted by the court. *People v. Anderson*, 367 Ill. App. 3d 653, 664 (2006).

¶ 50    On direct examination of Mau, defendant asked Mau if he had read defendant the warning to motorist while in the booking room of the Joliet Police Department. On cross-examination, the State asked Mau the same question. By the time of defendant's redirect examination, Mau's reading of the warning to motorist in the booking room was not a new issue. The video of the booking room could have been introduced in direct examination, and the State did not elicit on cross-examination any new information or new issues related thereto. We cannot say that the circuit court was arbitrary, fanciful, or unreasonable for denying defendant leave to play the booking room video.

¶ 51                            E. Discovery Violation

¶ 52    Finally, defendant contends that the State "introduced a document that Defendant did not get in Discovery." He contends that this caused "unfair surprise and prejudicing [*sic*] Defendant." Though defendant has not identified with any specificity the document to which he is referring, we assume that it is the warning to motorist form from the court file with which the State used to refresh Mau's memory. See *supra* ¶ 16.

¶ 53    That form was not introduced into evidence as defendant claims; it was merely used to refresh Mau's memory. Defendant has not cited any particular rule that he claims the State violated by purportedly withholding the document. See *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993) ("Bare contentions in the absence of argument or citation of authority do not merit consideration on appeal and are deemed waived."). Defendant is unable to show any sort of unfair surprise or prejudice. After having his memory refreshed, Mau testified that he read defendant the warning to motorist at 8:11 p.m. Defendant, having already asked Mau repeatedly if he had read the warning at 8:11 p.m., could not have been surprised by that

testimony.

¶ 54                                   III. CONCLUSION

¶ 55            The judgment of the circuit court of Will County is affirmed.

¶ 56            Affirmed.